IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

EBERHARD GLOEKLER                          )
and INGEBORG GLOEKLER,                      )
                                            )
            Plaintiffs,                      )    TC-MD 110994N
                                            )
      v.                                     )
                                            )
MULTNOMAH COUNTY ASSESSOR,                   )
                                            )
            Defendant.                       )    **DECISION**

Plaintiffs filed their Complaint on September 19, 2011, challenging Defendant's

disqualification from forestland special assessment 7.14 acres of property identified as Accounts

R316604 and R316632 (subject property) for the 2011-12 tax year. A telephone trial was held in

this matter on July 9, 2012. Eberhard Gloekler (Gloekler) and Ingeborg Gloekler appeared and

testified on behalf of Plaintiffs. Lindsay Kandra, Assistant County Counsel, appeared on behalf

of Defendant. Karla Hartenberger (Hartenberger), tax exemption specialist and farm/forest

appraiser for Defendant, testified on behalf of Defendant. Plaintiffs' Exhibits A through H and

Defendant's Exhibits A through F were offered and received without objection.

## I. STATEMENT OF FACTS

Gloekler testified that Plaintiffs have owned the subject property since 1973. He testified

that the subject property was in forestland special assessment at the time of Plaintiffs purchase.

Plaintiffs both testified concerning their ongoing efforts to clear blackberries and other brush

from the subject property and to reforest the subject property with native species. Gloekler

testified that the subject property is a north-facing, steep slope; he discovered that Western Red

Cedar succeeded on the subject property and that is the species that Plaintiffs have

predominantly planted. (*See* Ptfs' Ex F (photographs of the subject property showing trees and

contrast to adjacent property).) Gloekler testified that a forester visited the subject property at some point within the year before trial and was "surprised" at all of the work.

Gloekler testified that it was not Plaintiffs' intent to build a residence on the subject property at the time they purchased it in 1973. He testified that Plaintiffs lived in North Portland at the time and they decided to build a residence on the subject property in the 1980s after their children had all moved out of the North Portland home.

Plaintiffs submitted to Defendant an Application for Designation of Land as Forestland in January 1993. (Def's Ex D.)[1] In that application, Plaintiffs "summarize[d their] past experience and activity in growing and harvesting trees" as: "Slowly reestablish natural state." Gloekler testified that that statement referred to his activities on the subject property of removing blackberries and brush and replanting native species. In a 2002 questionnaire from Defendant, Gloekler indicated "Yes," he was "currently growing a marketable species of trees [*sic* in Defendant's questionnaire]." (Def's Ex E.) As additional explanation, Gloekler stated, "I am replanting original species (western red cedar douglas fir) *with no intention to market trees*." (*Id.*) (Emphasis in original.) In response to the question, "Is the predominate purpose of your land to grow and harvest trees of a marketable species," Plaintiffs checked the box "No." (*Id.*) Gloekler testified at trial that he never planned to cut trees on the subject property, noting that it "would have been a crime."

Defendant disqualified the subject property from forestland special assessment in notices dated June 22, 2011. (Ptfs' Compl at 2-7.) Hartenberger testified that the subject property was disqualified because it is subject to environmental overlays that greatly restrict the ability of

---

[1] The application bears a "Received" stamp from Defendant dated January 4, 1992, which appears to be erroneous. Plaintiffs dated their application January 1, 1993, and a notation by Defendant indicates that the application was approved on June 12, 1993. Regardless, the date the application was submitted is immaterial to the resolution of this matter.

property owners to harvest trees, which is part of the statutory definition of "forestland." (*See* Def's Ex B (map showing that the subject property is subject to "c" and "p" overlays).)

Plaintiffs acknowledge the overlays but disagree that they restrict harvest on the subject property. (*See* Ptfs' Mot for Summ J at 5; Ptfs' Ex H.) Plaintiffs provided an Affidavit of Mike Hayakawa (Hayakawa), "the Supervising Planner for the Environmental, Land Division, and Planning and Zoning Sections of the City of Portland's Bureau of Development Services." (Ptfs' Ex H at 1.) Hayakawa stated that "the Environmental Conversation and Protection overlay zones * * * would restrict and in some instances prohibit the removal of native trees, and therefore could restrict or prohibit private commercial harvesting of trees." (*Id.* at 2.) "Within the Forest Park sub-district of the Northwest Hills plan district, regulations and approval criteria require additional protection beyond the environmental overlay zones." (*Id.* at 3.)

> "If a property owner can document to the City's satisfaction that a commercial timber harvesting use was in place and ongoing before the placement of the environmental overlay zones, the activity, which would be considered maintenance of an existing planted area or change of crop type or farming technique on land currently in agricultural use, would be exempt from the environmental overlay zone regulations * * *.

> "To my knowledge, since the adoption of the environmental overlay zones, the City has received one application to conduct private tree-harvesting activities on properties located within the environmental overlay zones."

(*Id.* at 3-4.)

Plaintiffs dispute the imposition of "back taxes" as a result of the disqualification. Gloekler stated at trial that Plaintiffs feel that the back taxes are punitive in nature and unwarranted because Plaintiffs never misled Defendant regarding their forestland deferral. He reiterated that the subject property was in forestland special assessment at the time of Plaintiffs' purchase; thus, the previous owner had initially applied. Gloekler stated that the back taxes are a hardship for Plaintiffs because they are retired and have limited income.

## II. ANALYSIS

ORS 321.257(2)[2] provides the applicable definition of western Oregon "forestland":

> " 'Forestland' means land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees. * * *."

The relevant purpose of forestland special assessment is "[t]o establish a special assessment program as a means of * * * [r]ecognizing the long-term nature of the forest *crop* and fostering the public policy of Oregon to encourage the growing and harvesting of timber." ORS 321.262(2)(a) (emphasis added). Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).

In a recent decision, this court considered whether 3.75 acres of property located in the RF zone in Multnomah County qualified for forestland special assessment. *Hughes v. Multnomah County Assessor* (*Hughes*), TC-MD No 110903N, WL 2835414 (Jul 10, 2012). As here, the property at issue in *Hughes* was subject to both "c" and "p" environmental overlays. Relying in part on the reasoning in *Tucker v. Lane County Assessor* (*Tucker*),[3] TC-MD No 080902D, WL 88120 (Jan 14, 2009), the court stated that "[t]he environmental overlays greatly restrict the harvest of trees on the subject property," and, absent any evidence that the plaintiffs had taken steps to ensure that they could harvest trees despite those restrictions, the court was not

---

[2] All references to the Oregon Revised Statutes (ORS) are to 2009.

[3] In *Tucker*, the county assessor disqualified the property at issue based on "deed restrictions that prohibit and/or restrict the harvesting of trees, prohibit any commercial or industrial use to the land and is restricted to a residential use." WL 88120 at *1 (internal quotations omitted). The court held that the deed restrictions "interfered with the legislative purpose of the forestland special assessment program" and did "not permit [the taxpayers] to hold or use the [property at issue] 'for the predominant purpose of growing and harvesting trees.' " *Id.* at *3

persuaded that the plaintiffs' "predominant purpose [was] 'the growing and harvesting of trees of a marketable species.' " *Hughes*, TC-MD No 110903N.

Plaintiffs testified concerning their efforts to clear blackberries and brush from the subject property and to reforest the land with native species, including Western Red Cedar. However, there is no evidence that Plaintiffs have harvested trees on the subject property or have taken any steps necessary to obtain approval to harvest trees under the restrictions imposed by the environmental overlays. Based on Plaintiffs testimony, it appears that Plaintiffs have no intention of harvesting trees on the subject property. As this court stated in *Entenman v. Multnomah County Assessor*, purposes such as protecting the forest and preserving the environmental ecosystem are "laudable" but "do[] not meet the legal requirements for forestland special assessment." TC-MD No 101093C, WL 2436660 at *2 (Jun 16, 2011). Plaintiffs have not established by a preponderance of the evidence that their "predominant purpose" was "the growing and harvesting of trees of a marketable species."

Plaintiffs also request relief from the additional tax imposed under ORS 308A.703(2), citing both fairness and financial hardship. ORS 308A.703(2) states that "an additional tax *shall* be added * * *." (Emphasis added.) "Use of the word 'shall' makes clear that the addition of the taxes is mandatory." *Michel v. Jackson County Assessor*, TC-MD No 070674C, WL 4224968 at *2 (Nov 19, 2007). As this court noted in *Mark v. Dept. of Rev.*, "taxes on real property are assessed against property, not against the owner. It does not matter who owns the property. If the land is disqualified, the additional taxes are a lien upon the property." 12 OTR 369, 370-71 (1993). Imposition of the additional tax is mandatory and the court is not aware of any exception, for hardship or otherwise. The additional tax was lawfully imposed under ORS 308A.703(2) and Plaintiffs' request for relief from that tax must be denied.

### III. CONCLUSION

After careful consideration of the testimony and evidence presented, the court finds that Plaintiffs have not established by a preponderance of the evidence that the subject property is "forestland" within the meaning of ORS 321.257(2). The environmental overlays restrict Plaintiffs' ability to harvest trees on the subject property and Plaintiffs have not presented persuasive evidence that they may harvest trees under those restrictions. The court is not persuaded that Plaintiffs' "predominant purpose" is "growing and *harvesting* trees of a marketable species." ORS 321.257(2) (emphasis added). Plaintiffs' appeal must, therefore, be denied. The additional tax imposed under ORS 308A.703(2) is mandatory and the court is not aware of any exception, for hardship or otherwise. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of September 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on September 12, 2012. The Court filed and entered this document on September 12, 2012.*